**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0439n.06

**No. 11-1179**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Apr 24, 2012***

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| TIMOTHY DENNIS O'REILLY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

COOK, Circuit Judge. A jury convicted Timothy O'Reilly of one count of premeditated murder and five robbery-related counts stemming from his participation in two armored-truck robberies. The government sought the death penalty on the murder charge but, after a two-week penalty phase, the jury declined to impose the death penalty. The district court sentenced O'Reilly to life imprisonment. O'Reilly now appeals, asserting a *Brady* violation and also claiming that the district court committed several evidentiary errors. For the following reasons, we reject O'Reilly's arguments and affirm.

We turn first to O'Reilly's *Brady* challenge. "A *Brady* violation includes three elements: (1) the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or

inadvertently; and (3) prejudice must have ensued." *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)) (internal quotation marks omitted). O'Reilly's claim does not satisfy any of these three prongs. O'Reilly contends that the government ran afoul of *Brady* by failing to produce handwritten notes taken by Barron Nix-Bey, a witness who testified against O'Reilly at trial. But O'Reilly does not specify how the missing notes would have been exculpatory or impeaching beyond his conclusory assertion that he could have used the notes to impeach Nix-Bey. He also fails to explain how the government, which never possessed the disputed notes, could be charged with suppressing them. Indeed, the government produced letters to the police and FBI 302s from Nix-Bey that incorporated information from the notes. As for whether prejudice ensued, O'Reilly maintains only that Nix-Bey "changed his story on several occasions, and the notes could have been used to provide further impeachment material." Given O'Reilly's access to Nix-Bey's 302s and police letters, it is unclear what "impeachment material" the notes might have contained beyond that disclosed in the documents already in O'Reilly's possession. We reject O'Reilly's *Brady* claim.

The invited-error doctrine bars the remainder of O'Reilly's challenges. O'Reilly claims that the district court erred when it allowed prosecutors to present evidence relating to other robberies involving O'Reilly and O'Reilly's murder-for-hire efforts against prosecution witnesses. But O'Reilly's own defense counsel's opening statement informed the jury about both sets of events. He preemptively downplayed the seriousness of the murder-for-hire plot, saying:

> You're going to hear from a guy by the name of Guidice Young, Dominic Young. And I think it was in 2007 they're talking and you know, Tim [O'Reilly] is talking Watson did this, Watson did that, I did this, I did that. Oh, and by the way, there's these people who are Informants. I'd sure like to have them killed. Sounds pretty bad. Mr. Young goes to the FBI. Hey, this guy you know talks about killing witnesses and here's how seriously they took it. They did nothing. They didn't move Tim to another cell. They didn't move him to another jail. They didn't take away his phone privileges. The FBI didn't have him charged with other crimes. They didn't take away his visiting rights. They didn't even tell the Wayne County Jail where Tim was that this supposed plot had occurred. They didn't take it seriously enough to do anything and they're going to ask you to kill him with it.

Similarly, defense counsel referred to O'Reilly's 2003 arrest and conviction on concealed-weapon charges during his opening statement, explaining that the police discovered O'Reilly in the back of a parked van wearing a bulletproof vest and surrounded by three loaded firearms. The arrest came after a night during which O'Reilly and his associates robbed two "dope houses." Here too, counsel sought to downplay these events to the jury:

> About 18 months later in 2003, we have the Comerica Bank robbery at Chicago and Schafer, and then of course you will learn that some time afterwards Tim was arrested on charges of Carrying Concealed Weapons. The weapons have nothing to do with this case. That case has very little -- has really nothing to do with this case other than some of the same people were involved.

When the government then announced its intention to introduce additional evidence on these matters in light of the opening statement, O'Reilly's attorney explained that he "always assumed" that evidence of the murder-for-hire plots "was coming in" and that the government would "allude to" O'Reilly's later 2003 arrest. O'Reilly may now regret his counsel's decision to be first out of the gate

in addressing these disputed matters, but that regret does not warrant review. As this court explained

in an early case addressing the invited-error doctrine:

> There is no warrant of course for relieving the accused of the consequences of what appears to have been a planned defense stratagem, by the device of condemning as 'clear error' of the trial court a seemingly calculated risk of defense counsel which happened not to achieve the intended result with the jury.

*Edwards v. United States*, 265 F.2d 909, 910 (6th Cir. 1959). The references to the disputed issues

in O'Reilly's opening statement foreclose relief.

O'Reilly further asserts ineffective assistance of counsel based on his attorney's failure to

object to the challenged evidence at trial. We generally do not review ineffective-assistance claims

on direct appeal, preferring instead that a defendant raise them "in a post-conviction proceeding under

28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *United States v.*

*Thomas*, 74 F.3d 701, 715 (6th Cir. 1996) (quoting *United States v. Seymour*, 38 F.3d 261, 263 (6th

Cir. 1994)) (citation and quotation marks omitted). We therefore decline to review his corollary

ineffective-assistance claim.

We affirm.